53 CCPA

**CLAYTON MARK & COMPANY,**
Appellant,

v.

**WESTINGHOUSE ELECTRIC CORPO-
RATION, Appellee.**

Patent Appeal No. 7523.

United States Court of Customs
and Patent Appeals.

March 10, 1966.

Martin, J., dissented.

———◆———

Jerome Gilson, Chicago, Ill., for appellant.

Arthur S. Stewart, Pittsburgh, Pa., Ralph H. Swingle, Pittsburgh, Pa., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (142 USPQ 48) dismissing appellant's opposition to registration of "MARK 75" by Westinghouse Electric Corporation for "circuit breakers," application serial No. 109,928, filed December 8, 1960, claiming first use January 10, 1959.

Appellant Clayton Mark & Company's opposition is based primarily on long prior use and registration of "MARK" as a trademark for electrical conduit, i. e., steel pipe used in electrical wiring to protect the conducting wires. This is apparently included in the goods named in its registration No. 664,928, July 29, 1958, for "tubing, pipe, unions for connecting pipes or rods, and filters." Opposer has two other registrations of the same word, or name, for goods more remote from circuit breakers in particular and electrical goods in general, No. 160,916, October 31, 1922, and No. 664,043, July 8, 1958. The earliest registration was issued to Mark Manufacturing Company and the other two to its successor, Clayton Mark & Company. Clayton Mark III testified that the company was founded by his grandfather, that his father was associated with it, and that he himself had been employed continuously by it from 1938 when he graduated from college and had worked for the company eight previous summers.

Passing for the moment the probable impact on the public of the trademark "MARK," it is clear that it is in fact a family name employed by a family business to indicate the origin of its wares.

"MARK 75" was adopted by Westinghouse Electric Corporation as its designation for a new line of industrial circuit breakers—devices which open an electrical circuit when it is overloaded—designed to have an interrupting capacity of 75,000 amperes at 240 volts a.c.[1] and the line was promoted by advertising emphasizing that fact.

"MARK" is a term with an unusually large number of meanings—as a noun alone nearly a column in Webster's unabridged dictionary. It is a family name,

---

1. Apparently 75,000 amperes is the capacity of the largest unit in the line, which covers a range of 20,000–75,000. The interrupting capacity of the Westinghouse "standard" line of circuit breakers is from 5,000 to 50,000 amperes. This refers to the ability to interrupt fault currents without injuring the circuit breaker.

a proper name, and the name of the author of the second Gospel of the New Testament. It is also commonly used in an entirely different sense in combination with a numeral to designate a particular model or type. Some examples from the record are: "DC-8 Mark IV" airplanes, "Mark 5" shotgun shells, "Mark Ten" panelboards, "Mark 16" layout tools, "Mark 313" electric cooking appliance, "Mark III" capacitors, "Mark III" boilers, "Mark II" oil furnaces, "Mark IV" electron beam welders, and "Mark 8" color television. There are many others. Webster's Third New International Dictionary (Merriam) recognizes this usage, citing as an example a nuclear power plant known as "Mark I." There is evidence of a General Dynamics "TRIGA mark III" reactor.

When Westinghouse made a search on its proposed trademark "MARK 75" it found that Minneapolis-Honeywell Company was already using the same trademark on a slide projector but obtained consent to its use on circuit breakers. We cite this merely as an added example of this type of "mark" designation.

The price range of "MARK 75" circuit breakers is from $40 to $600. They are not sold in stores. The line contains between 150 and 160 different styles only 20 to 25 of which are stocked, the rest being manufactured only to order. A highly trained electrical engineer, not a mere electrician, is required to select the proper circuit breaker for the particular installation. Being more expensive than ordinary circuit breakers, it would appear that "MARK 75" breakers would not be used if ordinary breakers would be adequate. Purchase of "MARK 75" breakers would therefore be on a very discriminating basis, by persons who not only know what they are buying and why but who is producing it. We think it highly improbable that a buyer of a "MARK 75" breaker would not know it was a Westinghouse product.

This being so, we do not see that any confusion as to origin of the goods is likely by reason of the factors relied on by appellant, namely, that "MARK" electrical conduit and "MARK 75" circuit breakers may be bought from the same distributors, used by the same contractors, in the same structure, and included in the same specification sheets.

In spite of the obvious similarity we consider the trademarks to be of different types. Appellant's mark is not simply opposer's mark with the "mere" addition of "75." That addition converts what has every appearance of being a name of some sort into a trademark of the type- or model-designating variety.

The record shows that opposer uses "MARK" as a house designation, the way Westinghouse uses the dominant portion of its corporate name, on conduits of various types bearing the designations "ELECTRICTUBE," "GALVAKOTE," "HOTKOTE," AND "ENAMELKOTE." Its advertising features these products collectively as "MARK Conduit" but also prominently associates with the above type designations its company name as "Clayton Mark & Co." We believe that in general purchasers of "MARK Conduit" would be aware of the fact that it comes from a company named Mark and not Westinghouse.

We have here pointed out what appears to us to be the salient features of this case. There are, of course, others mentioned in the briefs and record and in the board's opinion. Having considered all of these we find no reason to disagree with the decision of the board and it is therefore affirmed.

Affirmed.

MARTIN, J., dissents.